# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.:  16-CV-21386

BAYVIEW LOAN SERVICING, LLC, DAVID ERTEL, BRIAN E. BOMSTEIN, BRIAN E. BOMSTEIN, PA, ANTONIO CHIMIENTI, MICHAEL B. GUSS, ROBERT PONDOLFI, THOMAS CARR, LAWRENCE A. HALPERN, TABAS, FREEDMAN & SOLOFF, P.A., JOEL LLOYD TABAS, GARY M. FREEDMAN, AND STACEY F. SOLOFF,

       Plaintiffs,

v.

RANDAL THOMAS ROSADO,

       Defendant.

_____/

### COMPLAINT FOR
### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs Bayview Loan Servicing, LLC, David Ertel, Brian E. Bomstein, Brian E. Bomstein, P.A., Antonio Chimienti, Michael B. Guss, Robert Pondolfi, Thomas Carr, Lawrence A. Halpern, Tabas Freedman & Soloff, P.A., Joel Lloyd Tabas, Gary M. Freedman, and Stacey F. Soloff ("Plaintiffs") file this action for declaratory judgment and injunctive relief against Defendant Randal Thomas Rosado ("Rosado") and in support, allege as follows:

CASE NO.

### Preliminary Statement

This action seeks to put an end to Rosado's campaign of harassment and intimidation directed at Plaintiffs through the use of fraudulent commercial lien claims[1] and other coercive tactics.

Bayview Loan Servicing, LLC ('Bayview") holds and services mortgage loans. Rosado is a borrower and mortgagor of one of those mortgage loans held by Bayview with respect to real property located in Orange County, New York. In November 2009, Bayview initiated a foreclosure action in the Supreme Court of the State of New York, Orange County, naming Rosado among others, seeking to foreclose its mortgage lien on the Orange County real property. As a result, Rosado, a self-styled     private attorney general specializing in foreclosure defense,[2] has engaged in a campaign of harassment against Bayview, its employees, and attorneys meant to intimidate them through a series of coercive tactics, including: (1) filing false police reports alleging theft of Rosado's identity,;(2) claiming fraudulent commercial liens against Plaintiffs in the aggregate amount of $8,730,000.00; and (3) filing a purported action in the International Court of Commerce seeking to enforce those commercial liens, when none of the Plaintiffs have ever agreed to submit any matter to the International Court of Commerce or to alternative dispute resolution. Plaintiffs seek declaratory relief from this Court as to the validity of the purported commercial liens asserted by Rosado and his other coercive tactics and injunctive relief forever prohibiting Rosado from seeking to enforce, record, or register commercial liens against

---

[1] For a purported overview of and guide to the use of fraudulent commercial liens, *see Commercial Liens: A Most Potent Weapon, Version 1.0,* http://www.mind-trek.com/practicl/comliens.htm, last viewed on March 21, 2016, which guides advocates that when "[f]aced with corrupt lawyers and judges, no litigant can expect to win in court by simply playing defense. To beat them, you must be able to scare them. You must be able to make them respect you, and that means you must be able to take the offense -- attack them personally."

[2] *See* http://www.usacommonlaw.com/pag.html, last viewed on March 21, 2016.

TABAS, FREEDMAN & SOLOFF, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

CASE NO.

Plaintiffs and from engaging in his other coercive tactics so that they may resume normal business and personal activities free of distress and anxiety and avoid further damages.

## Jurisdiction and Venue

1.     This Complaint seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the asserted bases for Rosado's putative claims against Plaintiffs and  the foundation upon which he asserts commercial liens against Plaintiffs are the following: 18 U.S.C. §§ 241 and 242; U.S.C. 15;[3]  and 42 U.S.C. §§ 1981, 1981(a), and 1988.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Rosado resides in the Southern District of Florida, and because the contemplated actions about which Plaintiffs need direction from this Court will occur within the Southern District of Florida.

## The Parties

4.     Bayview Loan Servicing, LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Coral Gables, Miami-Dade County, Florida.

5.     David Ertel ("Ertel") is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

6.     Brian E. Bomstein ("Bomstein") is a Florida resident who resides in Broward County, Florida and is an officer of Bayview.

---

[3] This incomplete citation is found in Rosado's *Notice of Fault and Enforcement of Liens Against Public Bonds for Continued Violations of 18 USC § 241, 18 USC § 242*, described in further detail below and attached hereto as Exhibit "5." Plaintiffs cannot tell to which title or section of the U.S. Code Rosado is referring.

TABAS, FREEDMAN & SOLOFF, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

CASE NO.

7.     Brian E. Bomstein, P.A. ("Bomstein PA") is a dissolved Florida corporation (dissolved 17 years ago), which had its principal place of business in Broward County, Florida.

8.     Antonio Chimienti ("Chimienti") is a Florida resident who resides in Broward County, Florida and is an officer of Bayview.

9.     Michael B. Guss ("Guss") is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

10.     Robert Pondolfi ("Pondolfi") is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

11.     Thomas Carr ("Carr") is a Florida resident who resides in Miami-Dade County, Florida and is an officer of Bayview.

12.     Lawrence A. Halpern ("Halpern") is a Florida resident who resides in Broward County, Florida and is an officer of Bayview.

13.     Tabas, Freedman & Soloff, P.A. ('TFS") is a Florida corporation with its principal place of business in Miami-Dade County, Florida and regularly represents Bayview.

14.     Joel Lloyd Tabas ("Tabas") is a Florida resident who resides in Miami-Dade County, Florida, is a Florida licensed attorney and an employee of TFS.

15.     Gary M. Freedman ("Freedman") is a Florida resident who resides in Miami-Dade County, Florida, is a Florida licensed attorney and an employee of TFS.

16.     Stacey F. Soloff ("Soloff") is a Florida resident who resides in Broward County, Florida, is a Florida licensed attorney and an employee of TFS.

17.     Ertel, Bomstein, Chimienti, Guss, Pondolfi, Carr, and Halpern shall be collectively referred to as the "Bayview Individuals". Tabas, Freedman and Soloff shall collectively be referred to as the "TFS Individuals."

18.     Rosado is a Florida resident who resides in Palm Beach County, Florida.

Tabas, Freedman & Soloff, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

CASE NO.

19.     Plaintiffs are all parties to the purported action filed by Rosado in the International Court of Commerce as described in detail below and are all subject of Rosado's fraudulent commercial liens and other coercive tactics.

### New York Proceedings

20.     On November 23, 2009, Bayview filed a foreclosure action in the Supreme Court of the State of New York, Orange County, naming Rosado among others, and seeking to foreclose its mortgage on certain real property located at 85 N. Main Street, Florida, New York, 10921-1305 (the "Property"), styled as *Bayview Loan Servicing, LLC v. Michelle Cruz; Randal Rosado;, et. al*., Case No. 2009-13067 (the "NY Foreclosure Action").   The NY Foreclosure Action remains pending.

21.     Other than Bayview, none of the Plaintiffs are parties to the NY Foreclosure Action.

### 2014 Begins a Campaign of Harassment

22.     On November 10, 2014, Rosado filed a police report with the Miami-Dade Police Department.[4] The Police Report, although difficult to decipher, specifically references Pondolfi, Bomstein, Chimienti, Guss, Carr, and Halpern and asserts entitlement to "a commercial lien in the amount of $5,820,000.00" emanating from the NY Foreclosure Action. Through information and belief, the Police Report was investigated, found meritless, and the matter was closed.

23.     On December 1, 2014, Rosado sent separate letters to the homes of Bomstein, Carr, Chimienti, Pondolfi, Guss, and Halpern regarding "Affidavit of Distress and Notice of Commercial Lien / Trespass Against Estate"   (collectively, "Rosado's December 1 Letter"). Rosado's December 1 Letter asserts that the recipients had engaged in various crimes emanating

---

[4] A true and correct copy pf the Miami-Dade Police Department Incident Report (the "Police Report") is attached hereto as Exhibit "1."

TABAS, FREEDMAN & SOLOFF, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

CASE NO.

from the NY Foreclosure Action and threatened that failing to provide public bonding information "will lead to the public filings of the commercial liens for public notice, and immediate administrative proceedings against [them] for enforcement by means of levying any real or personal property as necessary to satisfy any outstanding liens."[5]

24.     On December 11, 2014, Soloff, as attorney for the recipients of Rosado's December 1 Letter, wrote Rosado requesting that he cease and desist his campaign of harassment directed at them ("Soloff's December 11 Letter").[6]

25.     In response to the December 11 Letter, on December 30, 2014, Rosado wrote Soloff ("Rosado's December 30 Letter"), bringing TFS and the TFS Individuals into the periphery of his campaign of harassment, seeking public bond information from them, and threatening "to enforce commercial liens against you for your crimes against me for your unlawful actions and abuse of power as public officials under color of law." And with respect to the recipients of Rosado's December 1 Letter, "I will be seeking to collect through liens against any and all personal property, either individually or collectively until the lien is satisfied."[7]

26.     Hoping to create further distress, Rosado's December 30 Letter was sent to a number of state and federal agencies, including the New York State Department of Financial Services.  On January 12, 2015, the New York State Department of Financial Services sent an inquiry to Bayview requesting that it respond to Rosado's complaint, and on February 11, 2015, Soloff, on behalf of Bayview, responded to the New York State Department of Financial

---

[5] A true and correct copy of an exemplar of Rosado's December 1 Letter is attached hereto as Exhibit "2."

[6] A true and correct copy of Soloff's December 11 Letter is attached hereto as Exhibit "3."

[7] A true and correct copy of Rosado's December 30 Letter is attached hereto as Exhibit "4."

TABAS, FREEDMAN & SOLOFF, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

CASE NO.

Services' inquiry. On information and belief, Bayview's response resolved the New York State Department of Financial Services' inquiry and it thereafter closed the matter.

27.     As a result of the distress and anxiety caused by Rosado's activities described above, and because Plaintiffs were so concerned Rosado would carry out his threat of seeking to enforce his putative commercial liens, Plaintiffs have regularly conducted public record searches to make certain that no liens have been filed.

### Campaign of Harassment Moves to International Court of Commerce

28.     After Rosado's December 30 Letter, he went silent—until now.

29.     On February 15, 2016, Rosado commenced a purported action against Plaintiffs (the "ICC Action") in the International Court of Commerce entitled *Notice of Fault and Enforcement of Liens Against Public Bonds for Continued Violations of 18 USC § 241, 18 USC § 242* (the "Notice").[8]

30.     The Notice, verified by George Tenner of the Reichmann Group[9] as "Attorney-In-Fact for Claimants," references the NY Foreclosure Action and attempts to describe a convoluted and incomprehensible set of facts giving rise to violations of various federal laws resulting in Rosado having commercial lien rights in Plaintiffs' real and personal property in the total sum of $8,730,000.00.

31.     Rosado's designs in extracting recompense from Plaintiffs through his campaign of harassment is found, among other assertions in the Notice, at paragraph 20:

> In the event that the claim is not settled privately or through the insurance carrier, Claimant will seek garnishment of bank accounts, employee payroll and seizure

---

[8] A true and correct copy of the Notice is attached hereto as Exhibit "5."

[9] The Reichmann Group claims to be Counselors in Commerce and not "a public law firm or member of any state's private Bar Association. We act as the attorney-in-fact for our clients in many of the above-referenced services…." *See* http://www.reichmanngroup.com/about.html, last viewed on March 21, 2016.

TABAS, FREEDMAN & SOLOFF, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

CASE NO.

of real property as necessary for full payment collection until the matter is resolved amicably.

32.     None of the Plaintiffs have ever agreed with Rosado to alternative dispute resolution, including dispute resolution before the International Court of Commerce (the "ICC"). Plaintiffs have written twice to the ICC, with copies to Rosado and Tenner, indicating that they have never agreed to arbitrate before the ICC and that as a result, the ICC has no jurisdiction over Plaintiffs or the power or authority to adjudicate any controversy between the parties.  Yet, Rosado has provided no indication that he will relent, and by all indications, he will seek to have the ICC enter judgment in his favor and against Plaintiffs for the unprecedented relief requested in his Notice, and then seek to seize Plaintiffs' real and personal property.

**<u>Rosado's Cloud Over Plaintiffs' Property</u>**

33.     Contrary to Rosado's assertions, Plaintiffs are not public officials subject to any insurance or bonding requirements.

34.     Contrary to Rosado's assertions, other than Bayview, Plaintiffs are not parties to the NY Foreclosure Action.

35.     Contrary to Rosado's assertions, Plaintiffs have never agreed to alternative dispute resolution, and they have never agreed to resolve any dispute before the ICC.

36.     Notwithstanding Rosado being aware of this fact and Plaintiffs' expressed refusal to litigate the issues referenced in the Notice before the ICC, Rosado continues to seek to invoke the ICC's non-existent jurisdiction and obtain a fraudulent judgment against them.

37.     Without legal basis, Rosado continues to seek to enforce fraudulent commercial liens against the real and personal property of Plaintiffs. Plaintiffs are unaware of any legal basis for the invocation and enforcement of commercial liens against Plaintiffs.

38.     Rosado's campaign of harassment against Plaintiffs, including his continued threat of filing and enforcing fraudulent commercial liens against them and obtaining and

Tabas, Freedman & Soloff, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

CASE NO.

enforcing a fraudulent judgment from the ICC is continuing to cause Plaintiffs distress, anxiety, and other damages. For instance, Plaintiffs do not know if and when they can convey their property or even enter into agreements for such conveyances without potential negative financial consequences. Moreover, such threats if carried out by Rosado will have the real potential of causing irreparable harm to Plaintiffs' credit ratings.

39.     Accordingly there is a case and controversy and an actual and present need for a declaration by this Court as to Rosado's claims against the Plaintiffs, including his right to assert commercial liens against their property or to compel them to defend his claims through arbitration before the ICC or any other arbitration forum.

40.     There is a bona fide, actual, present, and practical need for a declaratory judgment because Rosado's campaign of harassment is causing Plaintiffs harm as described above.

41.     This request for a declaratory judgment deals with a present, ascertained or ascertainable state of facts or a present controversy as to the facts described herein.

42.     Plaintiffs' ability to continue to manage and convey their real and personal property and otherwise be free from Rosado's actual and threatened fraudulent activities and his campaign of harassment is dependent upon a determination by this Court as to the claims asserted by Rosado in his Notice.

43.     The relief sought herein is not the mere giving of legal advice by the courts or the answer to questions propounded from curiosity.  As described above, Rosado has incited an actual controversy by asserting commercial liens against Plaintiffs' real and personal property and his attempts to compel them to arbitrate the claims asserted in his Notice or otherwise obtain a fraudulent judgment in a forum that lacks jurisdiction, rendering Plaintiffs unsure of their legal rights and obligations and causing Plaintiffs actual and ongoing irreparable harm.

TABAS, FREEDMAN & SOLOFF, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

CASE NO.

44.     Plaintiffs have inadequate remedies at law to compensate for their injuries and, considering the balance of hardships between Plaintiffs and Rosado, a remedy in equity is warranted.

45.     The public interest will not be disserved by a permanent injunction enjoining Rosado from continuing his abusive tactics against Plaintiffs and their property.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court:

a.  enter a Final Declaratory Judgment determining that Rosado (i) is entitled to no relief as set forth in his Notice, (ii) has no commercial or other lien rights against Plaintiffs or their real or personal property, and (iii) cannot compel Plaintiffs to arbitrate any dispute or claims he has against them;

b.  declare null, void, and of no legal effect any liens recorded by Rosado with respect to Plaintiffs' real or personal property;

c.  permanently enjoin Rosado and his agents, servants, employees and attorneys from (i) pursuing the relief he seeks in his Notice in the ICC or any other forum and (ii) attempting to file or enforce any liens against Plaintiffs or their property;

d.  retain jurisdiction of this matter for the purpose of enforcing this Court's declaratory judgment and injunction; and

e.  award such further relief as it deems just and proper.

Dated: April 18, 2016

Respectfully submitted,

/s/ Gary M. Freedman
Gary M. Freedman
Florida Bar No. 727260
Tabas, Freedman & Soloff, P.A.
*Attorneys for Plaintiffs*
One Flagler Building
14 Northeast First Avenue - Penthouse
Miami, Florida 33132
Telephone:  (305) 375-8171
Facsimile:  (305) 381-7708
E-mail:  gfreedman@tabasfreedman.com

Tabas, Freedman & Soloff, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

MIAMI-DADE POLICE DEPARTMENT SUMMARY INCIDENT REPORT

**REPORT NUMBER: PD141110410170**

## INCIDENT INFORMATION

| INCIDENT CODE | INCIDENT TYPE | | INITIAL | X | DATE/TIME STARTED | DATE/TIME ENDED | DATE/TIME REPORTED |
|---|---|---|---|---|---|---|---|
| 7777777 | CIVIL DISPUTE | | SUPP | | 08/01/2009 09:30 AM | 11/05/2014 07:30 AM | 11/05/2014 08:27 AM |

| REPORT FILED FROM | TRACKING NUMBER | LOCATION OF OCCURRENCE | | APPROVED BY: |
|---|---|---|---|---|
| *** | T14001693 | 16404 BRIDGE END RD, 1840, MIAMI LAKES, FL | | Q309109/ELAINE RAHMING |

| LOCATION TYPE | THEFT TYPE | METHOD OF ENTRY | METHOD OF EXIT | PT OF ENTRY | PT OF EXIT | ENTRY LOC |
|---|---|---|---|---|---|---|
| BANK/FINANCIAL | | | | | | |

| COMMON PLACE NAME |
|---|
| |

## PERSON LISTINGS

| | TYPE | LAST NAME | FIRST NAME | MIDDLE NAME | DOB | SEX | PASSPORT | LIC ST |
|---|---|---|---|---|---|---|---|---|
| 1 | V | ROSADO | RANDAL | THOMAS | *** | | | |
| | SSN | EYE COLOR | HAIR COLOR | | AGE | HEIGHT | WEIGHT | CELL PHONE |
| | | | | | | | | |
| | ETHNICITY | | RACE | | RESIDENT STATUS | | | |
| | *** | | *** | | *** | | | |
| | EMAIL | | RESIDENCE ADDRESS | | | | HOME PHONE | |
| | RANDY@RANDYROSADO.COM | | *** | | | | *** | |
| | EMPLOYER NAME | | BUSINESS ADDRESS | | | | WORK PHONE | |
| | | | *** | | | | | |

## NARRATIVE

ON LISTED DATE(S) AND TIME(S), I HAD A CIVIL DISPUTE INVOLVING: ROBERT PONDOLFI, AND HIS COLLEAGUES, BRIAN ERIC BOMSTEIN, ANTONIO CHIAMENTI, MICHAEL B. GUSS, THOMAS F X CARR, AND LAWRENCE A. HALPERN, COMMITTED VARIOUS CRIMES AGAINST RANDAL THOMAS ROSADO, EXECUTOR FOR RANDAL T. ROSADO© AND ALL SIMILAR VARIATIONS. ALL OF THE ABOVE LISTED TORT FEASORS ARE BONDED BY THEIR OATHS OF OFFICE TO OPERATE AS ATTORNEYS UNDER THE FLORIDA BAR, AND ACTING AS "BAYVIEW LOAN SERVICING, LLC", AND WILL BE COLLECTIVELY REFERRED TO AS SUCH OR SIMPLY "BAYVIEW" THROUGHOUT THIS REPORT.

ON AUGUST 1, 2009 BAYVIEW HAS STOLEN THE IDENTITY OF RANDAL T. ROSADO©, ESTATE AND/OR SIMILAR VARIATIONS IN ORDER TO UNLAWFULLY OBTAIN INSURANCE PROCEEDS THAT BELONGED TO THE ESTATE. BAYVIEW HAS CAUSED MALICIOUS AND INTENTIONAL DAMAGE TO RANDAL THOMAS ROSADO BY FILING A CASE AGAINST RANDAL T. ROSADO©, ESTATE ON NOVEMBER 12, 2009. THE CASE CONTAINS THE INDEX NO. 09-13067 IN THE SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF ORANGE.

BAYVIEW HAS BEEN UNABLE TO OBTAIN A JUDGMENT, HAS BEEN FORCED BY THE COURT TO RELEASE SOME OF THE ESTATE'S INSURANCE PROCEEDS BEING HELD UNLAWFULLY, AND THEY ARE CURRENTLY FACING COUNTERCLAIMS INVOLVING VIOLATIONS FOR RACKETEERING AND CORRUPT ORGANIZATIONS ACT (RICO) TOTALING $3,922,275.24. FURTHERMORE, COMMERCIAL LIENS TOTALING $9,380,000.00 HAVE BEEN FILED AGAINST ALL COURT OFFICIALS INVOLVED, AS WELL AS AGAINST ORANGE COUNTY, NEW YORK AND THE NEW YORK STATE UNIFIED COURT SYSTEM FOR THE BILL OF RIGHTS AND CONSTITUTIONAL VIOLATIONS. THIS IS ALL A RESULT OF THE CONDUCT OF THE ABOVE-LISTED INDIVIDUALS AND THEIR CONSPIRATORS.

**EXHIBIT 1**

**REPORT NUMBER: PD141110410170**

BAYVIEW INDIVIDUALLY OR COLLECTIVELY IS FACING A COMMERCIAL LIEN IN THE AMOUNT OF $5,820,000.00 AND FOR THE DAMAGES AGAINST THE CREDIT OF RANDAL T. ROSADO© WHICH HAS TAKEN PLACE FOR OVER 5 YEARS. THE REPORTS OF ALL AGENCIES CURRENTLY CLAIM THE DEBT BEGAN IN 2004, MORE THAN SIX YEARS BEFORE ANY LITIGATION OR COMMUNICATION OF ANY KIND EVER OCCURRED.

PERSON [RANDAL ROSADO]:

- RESIDENCE LOCATION TYPE = [FLORIDA (OUTSIDE OF DADE COUNTY)]

RANDAL THOMAS ROSADO, Estate
Office of the Executor
c/o Randal Thomas Rosado, Secured Party Executor
340 Royal Poinciana Way #317-141
Palm Beach, FL 33480

December 1, 2014

Lawrence A. Halpern
7347 NW 111 Way
Parkland, FL 33076

Re: Affidavit of Distress and Notice of Commercial Lien / Trespass Against Estate
    (85 N Main Street, Florida NY 10921)

Dear Mr. Halpern;

Please be advised of the attached documents as it relates to the crimes that you
have participated in committing against myself, my family, RANDAL THOMAS
ROSADO, Estate and other Trust entities (and all variations of) for more than five years.
While I have not entered into any contracts with your organization, either representing
myself, RANDAL THOMAS ROSADO, Estate, or any other parties, nor have you never
collected a single payment on the alleged debt and have failed to validate or prove your
authority despite numerous requests from myself and even court proceedings currently
taking place in SUPREME COURT of THE STATE OF NEW YORK COUNTY OR
ORANGE that were initiated by you with the assistance of ROSICKI, ROSICKI &
ASSOCIATES, P.C. the co-conspirators you hired to attempt to help you commit these
crimes, your office continues to harass me by telephone and mail, violating trust law and
copyright law in the process.

Immediately provide your public bonding information as required by law. Failure
to do so or your failure to reach an adequate resolution within 10 days or receiving this
letter will lead to the public filings of the commercial liens for public notice, and
immediate administrative proceedings against you for enforcement by means of levying
any real or personal property as necessary to satisfy any outstanding liens.

> *All officials are required by federal, state, and municipal law to provide the name,
> address and telephone number of their public hazard and malpractice bonding
> company and the policy number of the bond and, if required, a copy of the policy
> describing the bonding coverage of their specific job performance. Failure to
> provide this information constitutes corporate and limited liability insurance
> fraud (15 USC) and is prim-a-facie evidence and grounds to impose a lien upon
> the official personally to secure their public oath and service of office.*

**EXHIBIT 2**

You will also be held accountable for your federal violations against me as it relates to the Fair Debt Collection Practices Act (FDCPA) and Fair Credit Reporting Act (FCRA) in addition to the pending charges for violating the Racketeering Influenced and Corrupt Organizations Act (RICO).

You have also participated in violations of New York law, which provides that any transfers beyond the stated powers of the trust are void. "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance, or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." McKinney's Consolidated Law of New York Annotated, Estates Powers and Trust Laws, section 7-2.4 (2003); see Allison & Ver Valen Co. v. McNee, 9 N.Y.S. 2D 708 (N.Y. Sur. 1939).

If the trust subsequently became a private trust, it too is prevented from taking a note in blank by New York law. EPT. LAW § 7-2.1: NY Code – Section 7-2.1 provides: *Extent of trustee's estate, subsection (c) A trust as described in sections 9-1.5, 9-1.6 and 9-1.7 of the estates, powers and trusts law, including a business trust as defined in subdivision two of section two of the general associations law, may acquire property in the name of the trust as such name is designated in the instrument creating said trust.*

You have also violated the following New York Trust Laws:

1. NY Estates, Powers and Trust Law § 7-1.18 Trust Asset
   *Unless an asset is transferred into a lifetime trust, the asset does not become trust property.*

2. NY Estates, Powers and Trust Law § 7-2.4 Trustees Duties
   *A trustee's act that is contrary to the trust agreement is void.*

3. NY Estates, Powers and Trust Law § 5-1401. Choice of law
   a) The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1-105 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection two of section 1-105 of the uniform commercial code.
   b) Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement or undertaking.

4. NY Estates, Powers and Trust Law § 5-1402. Choice of forum

a)  Notwithstanding any act which limits or affects the right of a person to maintain an action or proceeding, including, but not limited to, paragraph (b) of section thirteen hundred fourteen of the business corporation law and subdivision two of section two hundred-b of the banking law, any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b) which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state.

b)  Nothing contained in this section shall be construed to affect the enforcement of any provision respecting choice of forum in any other contract, agreement or undertaking.

Please note the following attachments as it relates to the constitutional crimes and Bill of Rights violations against me, as well as trust violations relating to the estate and the real property owned by the estate.

- Affidavit of Distress and Notice of Commercial Lien
- Police Report Filed with Miami-Dade Police Department
- Identity Theft Affidavit - As filed with the Federal Trade Commission

Regards,

Randal Thomas Rosado
Secured Party Executor, RANDAL THOMAS ROSADO, Estate.

cc:

Gregory William Coleman
The Florida Bar
303 BANYAN BLVD Ste 400
WEST PALM BEACH, FL 33401-4639


TABAS FREEDMAN
Attorneys

One Flagler Building
14 Northeast First Avenue, Penthouse
Miami, Florida 33132

Telephone 305.375.8171
Facsimile 305.381.7708
www.tabasfreedman.com

Stacey F. Soloff
ssoloff@tabasfreedman.com

December 11, 2014

Randal Thomas Rosado
340 Royal Poinciana Way #317-141
Palm Beach, Florida 33480

***Via United States Mail and
Certified Mail, Return Receipt
Requested***

Re:     Your correspondence dated December 1, 2014

Dear Mr. Rosado:

This law firm represents Bayview Loan Servicing, LLC and Bayview Asset Management, LLC (collectively referred to as "Bayview"), and Robert Pondolfi, Brian Bomstein, Antonio Chimienti, Michael Guss, Thomas Carr and Lawrence Halpern (collectively, the "Individuals"), both individually and in their capacities as employees of Bayview. Please immediately cease and desist from any further communication with Bayview and each of the Individuals in any manner and by any means other than through this office. This includes, but is not limited to, directing any correspondence to the Individuals' business and home addresses. Bayview and the Individuals have the right to be free from harassing activity and if you do not immediately cease all contact Bayview and the Individuals may pursue any legal remedies available to them including but not limited to contacting law enforcement, seeking a restraining order, and commencing civil litigation. This letter should not be taken as a waiver of any legal rights Bayview or the Individuals may now have or may have in the future; its purpose is to advise you to cease direct communication before Bayview and the Individuals exercise those rights.

GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

Stacey F. Soloff
cc:     Bayview Loan Servicing, LLC
        Bayview Asset Management, LLC
        Robert Pondolfi
        Brian Bomstein
        Antonio Chimienti
        Michael Guss
        Thomas Carr
        Lawrence Halpern
        Gary M. Freedman

Tabas, Freedman & Soloff, P.A.

**EXHIBIT**

**3**

RANDAL THOMAS ROSADO, Estate
c/o Randal Thomas Rosado, Executor
340 Royal Poinciana Way #317-141
Palm Beach, Florida

Tabas, Freedman & Soloff, P.A.
One Flagler Building
14 Northest First Avenue, Penthouse
Miami, Florida 33132
Phone: 305-375-8171
Fax: 305-381-7708

December 30, 2014

**RE: Response to Correspondence and Official Request for Public Bonding
Company Information per U.S. Code 15**

Dear Stacey,

I am in receipt of your letter dated December 11, 2014 on behalf of Bayview Loan
Servicing, LLC, Bayview Asset Management, LLC and its attorneys, regarding a request
to "cease and desist" in my communications with your clients, when they have committed
numerous crimes against me, in addition to other federal and state violations since 2009.
Needless to say, I find it ironic that you are asking me to cease and desist and have
considered the exercising of my civil rights and communication as "harassment" and have
threatened me with "law enforcement", when your client has stolen my identity and
brought this controversy to me without me having any contractual agreements with them
or any of their representatives.

Your attempts to threaten and bully me under the color of law can only be
construed that you and your partner attorneys have taken a position as co-conspirators in
the crimes against me and my estate, including violations against the constitution, bill of
rights, and Racketeering and Corrupt Organizations Act (RICO) for the trespasses, theft
of property and criminal acts. Your client has also violated New York Trust Law,
committed securities fraud and evaded IRS taxes as will be explained further throughout
this letter.

I also invite you to show me the law stating that I cannot communicate with your
clients at their personal residence or any location listed on public records, as they have

EXHIBIT
4

without contract, notice or invitation committed damage against my personal residence and have continued communicating with me at that address. Please explain why you feel as if you are above the law and can make the rules as you go along in order to intimidate the public. Did you not take an oath of office when becoming registered with the Florida Bar? Regardless, I will honor your request in that all future communications regarding this matter will be directed to you.

**THIS IS OFFICIAL NOTICE AND REQUEST FOR PUBLIC BONDING INFORMATION** to you, Joel Lloyd Tabas, and Gary M. Freedman. All officials are required by federal, state, and municipal law to provide the name, address and telephone number of their public hazard and malpractice bonding company and the policy number of the bond and, if required, a copy of the policy describing the bonding coverage of their specific job performance. Failure to provide this information constitutes corporate and limited liability insurance fraud (15 USC) and is prim-a-facie evidence and grounds to impose a lien upon the official personally to secure their public oath and service of office. Failure to provide this information to me will result in liens being placed against you and your partners, and enforcement of those liens will be sought against your personal property in an international common law court that will render your Bar card and law degree useless, forcing you to play by the rules and stop acting as if you are above the law.

Furthermore, your clients, Robert Pondolfi, Brian Bomstein, Atonio Chimienti, Michael Guss, Thomas Carr, and Lawrence Halpern have failed to provide their public bonding information to me as requested, and as such, I will be seeking to collect through liens against any and all personal property, either individually or collectively until the lien has been satisfied. This request was made thoroughly in writing on the December 1, 2014 correspondence that your letter addresses. Your clients' acquiescence and failure to rebut the contents of the affidavit that details the crimes they have committed, provide proof of their guilt. **An un-rebutted affidavit stands as truth in commerce. An un-rebutted affidavit is acted upon as the judgment in commerce.**

For more than 5 years your client has continued to lie and contradict its own statements through written correspondence on its own letterhead. They have also filed fraudulent documents into county records to transfer ownership of an alleged mortgage

without any consideration or valid authority. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act.

## Title 18 USC chapter 47 § 1021

*Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

While your client recorded the fraudulent assignment on August 9, 2009, correspondence from them beyond that point denies ownership, including a letter from your client (Sara Torres) dated January 27, 2010 that directly contradicts a letter received by CitiMortgage (Tonya Garner) on January 20, 2010 indicating that the "transfer" occurred on August 3, 2009. Yet, in a letter from your client (Ana Vega) dated May 2, 2014, they indicate that they "acquired servicing" on March 9, 2010.

Regardless of all of that, your client (Marilyn Coro, Vice President) has sent a "NOTICE OF TRANSFER OF MORTGAGE LOAN" dated March 23, 2010, that indicates the "new creditor" as being **U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1.** Then on July 01, 2013 your client (Marilyn Coro, Vice President) had sent another "NOTICE OF TRANSFER OF MORTGAGE LOAN" indicating the new creditor as **U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1.**

It appears that you, your clients, and their other attorneys are committing securities fraud and violating New York State Trust Law. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. The NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Suchapter M, Part II § 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has voided its Tax Free Status, or the asset is not in fact owned by it.

In the event that the loan was sold, pooled, and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full. Further said, once the Note was converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as "double dipping". Double dipping is a form of securities fraud.

In order to exist, the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1 agreed to operate under the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 PSA and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1 PSA and all applicable Law. As previously explained in ¶22, in order to for the Mortgage Loan to be transferred to the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1, a chain of negotiations needed to occur. A direct transfer from the Original Lender, Argent Mortgage, LLC, would violate the terms and conditions under the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1 PSA, under New York State Trust Law governing the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1, and would therefore be void either or both. These principles were recently confirmed in US District Court and New York Supreme Court and the California Supreme Court:

*"See Wells Fargo Bank, N.A. v. Erobobo, et al., 2013 WL 1831799 (N.Y. Sup. Ct. April 29, 2013). In Erobobo, defendants argued that plaintiff (a REMIC trust) was not the owner of the note because plaintiff obtained the note and mortgage after the trust had closed in violation of the terms of the PSA governing the trust, rendering plaintiff's acquisition of the note void.Id. at \*2. The Erobobo court held that under § 7-2.4, any conveyance in contravention of the PSA is void; this meant that acceptance of the note and mortgage by the trustee after the date the trust closed rendered the transfer void. Id*

*at 8. Based on the Erobobo decision and the plain language of N.Y. Est. Powers & Trusts Law § 7-2.4, the Court finds that under New York law, assignment of the Saldivars' Note after the start up day is void ab initio"*

Furthermore, an assignment of the Mortgage made now would not be timely to properly transfer the Note and Mortgage to the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1, where it has been shown to be an asset.

*Conveyance of Mortgage Loans.*

*(a) The Depositor, concurrently with the execution and delivery hereof, does hereby establish the Trust and transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule, the rights of the Depositor under the Assignment and Assumption Agreement and the Mortgage Loan Purchase Agreement and all other assets included or to be included in the Trust Fund. Such assignment includes all interest and principal received by the Seller, the Depositor or the Servicer on or with respect to the Mortgage Loans (other than payments of principal and interest due on such Mortgage Loans on or before the Cut-off Date). The Depositor herewith delivers to the Trustee and the Securities Administrator an executed copy of the Assignment and Assumption Agreement. In addition, on or prior to the Closing Date, the Securities Administrator shall execute the Swap Agreement and the Depositor hereby directs the Securities Administrator to do so. With respect to any Mortgage Loan that does not have a first payment date during the Due Period related to the first Distribution Date, the Depositor shall deposit into the Distribution Account on or before the Servicer Remittance Date relating to the first Distribution Date, an amount equal to one month's interest at the related Net Mortgage Rate on the Cut-off Date Stated Principal Balance of such Mortgage Loan.*

If the assignment and transfer of the Mortgage Loans and the other property specified in this Section 2.01 from the Depositor to the Trustee pursuant to this Agreement is held or deemed not to be a sale or is held or deemed to be a pledge of

security for a loan, the Depositor intends that the rights and obligations of the parties shall be established pursuant to the terms of this Agreement and that, in such event, (i) the Depositor shall be deemed to have granted and does hereby grant to the Trustee, for the benefit of the Certificateholders, as of the Closing Date a perfected, first priority security interest in the entire right, title and interest of the Depositor in and to the Mortgage Loans and all other property conveyed to the Trust Fund pursuant to this Section 2.01 and all proceeds thereof, substitutions therefor and accessions thereto, and (ii) this Agreement shall constitute a security agreement under applicable law.

*Prohibited Transactions and Contributions Tax.*

*The REMIC will be subject to a 100% tax on any net income derived from a "prohibited transaction." For this purpose, net income will be calculated without taking into account any losses from prohibited transactions or any deductions attributable to any prohibited transaction that resulted in a loss. In general, prohibited transactions include:*

*(1) subject to limited exceptions, the sale or other disposition of any qualified mortgage transferred to the REMIC;*

*(2) subject to a limited exception, the sale or other disposition of a cash flow investment;*

*(3) the receipt of any income from assets not permitted to be held by the REMIC pursuant to the Code; or*

*(4) the receipt of any fees or other compensation for services rendered by the REMIC.*

*It is anticipated that a REMIC will not engage in any prohibited transactions in which it would recognize a material amount of net income. In addition, subject to a number of exceptions, a tax is imposed at the rate of 100% on amounts contributed to a REMIC after the close of the three-month period beginning on the startup day. The holders of Residual Interest Securities will generally be responsible for the payment of any taxes for prohibited transactions imposed on the REMIC. To the extent not paid by those holders or otherwise, however, taxes that will be paid out of the trust fund and will be allocated pro rata to all outstanding classes of securities of that REMIC.*

We are also requesting an IRS investigation of your company for tax evasion based on Internal Revenue Code Section 860, which regulates the activities and requirements of a REMIC Trust. *According to 26 CFR§ 1.860D-1(c)(2)* **Identification of assets.** *The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the*

REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC.

We ask for your forthcoming assistance in providing any information that would determine that you are not violating any New York State Trust Laws stated below. Failure to rebut such claims will indicate your clients' guilt in breaking these laws with your knowledge and assistance.

NY Estates, Powers and Trust Law § 7-1.18 Trust Asset
*Unless an asset is transferred into a lifetime trust, the asset does not become trust property.*

NY Estates, Powers and Trust Law § 7-2.4 Trustees Duties
*A trustee's act that is contrary to the trust agreement is void.*

NY Estates, Powers and Trust Law § 5-1401. Choice of law

1. The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1-105 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection two of section 1-105 of the uniform commercial code.

2. Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement or undertaking.

NY Estates, Powers and Trust Law § 5-1402. Choice of forum

1. Notwithstanding any act which limits or affects the right of a person to maintain an action or proceeding, including, but not limited to, paragraph (b) of section thirteen hundred fourteen of the business corporation law and subdivision two of section two hundred-b of the banking law, any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the

CitiMortgage, Inc.           www.citimortgage.com
5280 Corporate Drive
Frederick, MD 21703

CitiMortgage



January 20, 2010

Randal Rosado and Michelle Rosado
85 N Main Street
Florida, NY 10921

RE:   CitiMortgage Loan Number:
      Mortgagor's Names:        Randal Rosado and Michelle Rosado
      Property Address:         85 N Main Street
                                Florida, NY 10921

Dear Mr. Randal Rosado and Michelle Rosado:

Please be advised that effective August 3,2009 CitiMortgage, Inc. (CMI) service released this
loan to Bayview Loan Servicing LLC.

<table>
<tr><td align="center"><b>SEND PAYMENT TO:</b><br>Bayview Loan Servicing, LLC<br>P.O. Box 3042<br>Milwaukee, WI 53201-3042</td><td align="center"><b>CUSTOMER SERVICE:</b><br>TOLL FREE NUMBER & HOURS<br>1-800-457-5105<br>8:00 a.m. – 7:00 p.m., (ET)<br>Monday – Friday</td></tr>
</table>

Bayview Loan Number 411596

Please contact their office to obtain the information you require.

Sincerely,

Tanya Garner
Legal Support Specialist

* Calls are randomly monitored and recorded to ensure quality service.

©2008 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.

 **BAYVIEW**
LOAN SERVICING

**NOTICE OF TRANSFER OF MORTGAGE LOAN**

Date:    March 23, 2010

RANDAL ROSADO
85 N MAIN ST
FLORIDA, NY 109211305

Dear Bayview Borrower(s):

In this Notice, the terms "we", "us" or "our" mean the new creditor identified below. The terms "you" and "your" mean the mortgage borrower(s) identified below. This Notice is provided by or on behalf of the new creditor identified below.

We are sending you this Notice because your mortgage loan identified below has been transferred to us. You may contact the prior holder of your mortgage loan, or the servicer of your mortgage loan, if you want to confirm the transfer of your mortgage loan to us.

Date of this Notice:  March 23, 2010

Mortgage Borrower Name(s):              RANDAL ROSADO

Mortgage Loan Information:
    Loan Number:
    Date of Loan:                       11/29/2004
    Origional Amount of Loan:           $267,750.00
    Address of Mortgaged Property:      85 N MAIN STREET
                                        FLORIDA, NY 10921

**Please note the following information regarding the transfer of your mortgage loan:**

1.  The identity (name), address and telephone number of the new creditor:

    U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of CBO REMIC Trust 2010-1 Certificates, Series 2010-1
    Attn. Corporate Trust Services
    60 Livingston Ave., EP-MN-WS3D
    St. Paul, Minnesota 55107
    Phone: 651-495-3840

2.  The date of the transfer of your mortgage loan: March 09, 2010

3.  How to reach an agent or party having authority to act on behalf of the new creditor:

    | |   We are the servicer for your mortgage loan.  The mailing address and phone number to reach us is:

    |X|   Your mortgage loan is serviced by a servicer we hired.  The mailing address and phone number to reach our servicer is:

    **Bayview Loan Servicing, LLC**          **TOLL FREE NUMBER & HOURS**
    **ATTN: Customer Service**                1-800-457-5105
    **5th Floor Mail Room**                   8:00 a.m. – 7:00 p.m., (ET)
    **4425 Ponce De Leon Blvd**               Monday – Friday
    **Coral Gables, FL 33146**

4.  The location of the place where transfer of ownership of the debt is or may be recorded is the county recorder's office for ORANGE, New York.

5.  Additional information: This Notice does not identify or otherwise change the address where you send your mortgage loan payments. If there is any change in the address for your mortgage loan payments, you will be notified of such change separately and apart from this Notice.

Sincerely,

Marilyn Coro

Marilyn Coro
Vice-President

**BAYVIEW**
LOAN SERVICING

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, FL 33146

**NOTICE OF TRANSFER OF MORTGAGE LOAN**

Date of this notice: July 01, 2013

RANDAL ROSADO
85 N MAIN ST
FLORIDA, NY 109211305

**Loan Number:**

**Property Address:**   85 N MAIN STREET
FLORIDA, NY 109210000

Dear RANDAL ROSADO

You are receiving this Notice because your mortgage loan identified below had a change of creditor. The servicing entity has not changed. Bayview Loan Servicing, LLC will continue to service your mortgage loan.

The change of creditor is a common practice and it is our goal to make it as seamless as possible for you. To confirm the information contained in this Notice or to reach an agent, please refer to the contact information listed below.

**Mortgage Loan Information**

Mortgage Borrower Name(s):          RANDAL ROSADO

Loan Number:
Loan Date:                                11/29/2004
Original Loan Amount:                  $267,750.00
Address of Mortgaged Property:     85 N MAIN STREET
FLORIDA, NY 109210000

**Please note the following information regarding the transfer of your mortgage loan:**

1. The identity (name), address and telephone number of the new creditor:

   U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of Bayview Opportunity Fund REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1
   Attn. Corporate Trust Services
   60 Livingston Ave., EP-MN-WS3D
   St. Paul, Minnesota 55107
   Phone: 800-934-6802

2. **Ownership transfer date:**     June 21, 2013

3. **To reach an agent** or party having authority to act on behalf of the new creditor:

   |   |, We are the servicer for your mortgage loan.   The mailing address and phone number to reach us is:

   | X | Your mortgage loan is serviced by a servicer we hired.  The mailing address and phone number to reach our servicer is:

   Bayview Loan Servicing, LLC              Toll Free Number & Hours
   ATTN: Customer Service                   1 (800) 457-5105
   5th Floor Mail Room                         8:00 a.m. – 9:00 p.m., (ET)
   4425 Ponce De Leon Blvd                 Monday – Friday
   Coral Gables, FL 33146

section 404 v.1.1



Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, Fl. 33146

4.    The location of the place where transfer of ownership of the debt is or may be recorded is the county recorder's office for Orange, New York.

5.    Additional information: This Notice does not identify or otherwise change the address where you send your mortgage loan payments. If there is any change in the address for your mortgage loan payments, you will be notified of such change separately and apart from this Notice.

Bayview Loan Servicing, LLC is here to assist you with your loan servicing needs.

Sincerely,

Marilyn Coro

Marilyn Coro, First Vice-President
Customer Support
Bayview Loan Servicing, LLC

01/01/2002  00:18    845-651-3153                                                     PAGE   07

*Fraud + Identity theft*

CMI L#:
Assignee L#:
Effective Date: 08/01/2009

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE , O'FALLON, MO 63368, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **BAYVIEW LOAN SERVICING, LLC, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD 5TH FLOOR, CORAL GABLES, FL 33146, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**

Mortgage dated 11/11/2004, made by **RANDALL ROSADO AND MICHELLE CRUZ** to **ARGENT MORTGAGE COMPANY, LLC** in the principal sum of $267,750.00 and recorded on 01/06/2005 in Liber 11714 page 1295, Doc# 20050001909 in the office of the Registry of ORANGE County, N.Y.

See Exhibit attached for Assignments, Modifications etc. This mortgage(s) has not been further assigned of record. This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated:**THIS 28TH DAY OF JULY IN THE YEAR 2009**
**CITIMORTGAGE, INC.**

*Bryan Bly*

By
  **BRYAN BLY  VICE PRESIDENT**

By _____
     **VILMA CASTRO witness**

STATE OF FLORIDA COUNTY OF PINELLAS
THIS 28TH DAY OF JULY IN THE YEAR 2009, before me, the undersigned, personally appeared BRYAN BLY, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in PINELLAS County, State of FLORIDA

_____
CHRISTOPHER JONES Notary Public
Residing in the county of PINELLAS
My commission expires:08/03/2012

Christopher Jones
Notary Public, State of Florida
Commission # DD 811078
Expires August 03, 2012
Bonded Through National Notary Assn.

Document Prepared By: **Jessica Fretwell**/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Property ID(S/B/L): SEC 105 BL 2 LOT 31
Return by Mail to: CitiMortgage, Inc.
                   C/O NTC 2100 Alt. 19 North
                   Palm Harbor, FL 34683

form3/FRMDTX1

Book12885/Page611                                    Page 2 of 3



Monday, May 24, 2010

To whom it may concern:

Bryan Bly has been employed with Nationwide Title Clearing since March 24, 2003. Since arrival at NTC and to this day he works in our Processing Department.

Thank you,

Sean Hunt
Vice President Human Resources
Nationwide Title Clearing, Inc.
Phone: 727-771-4000 x226
Fax: 727-771-4006
Email: Sean_Hunt@nwtc.com



In a videotaped deposition, Bryan Bly, an employee at
Florida-based Nationwide Title Clearing, a firm that
processes mortgage assignments, testified that
sometimes his signature would be added electronically
to documents he had never seen. (The Forrest Law
Firm/YouTube)



TUESDAY, JULY 19, 2011

SHARE  PRINT

## Hank Investigates: Suspicious Mortgage Signatures





**NOTARY PUBLIC COMMISSION APPLICATION**

Florida Department of State

Notary Commission (850) 245-6971

15 3126568

**OATH OF OFFICE**

STATE OF FLORIDA

Count: Pinellas

real signature oath from Notary



THE INTERNATIONAL COURT OF COMMERCE

INSTR # 20160216002

Recorded 02/16/2016  11:17 AM
International Court of Commerce
DEPUTY REGISTRAR: 212

Randal Thomas Rosado, American Non-Citizen National,
   Claimant

   and

BAYVIEW LOAN SERVICING, DAVID ERTEL, BRIAN E. BOMSTEIN, BRIAN E. BOMSTEIN, PA, ANTONIO CHIAMENTI, MICHAEL B. GUSS, ROBERT PONDOLFI, THOMAS   CARR,   LAWRENCE   A. HALPERN,   TABAS,   FREEDMAN   & SOLOFF,  P.A,  JOEL  LLOYD  TABAS, GARY M. FREEDMAN, AND   STACEY SOLOFF.

      Respondent(s)

CASE DOCKET NO. **ICC-16-0010126**

NOTICE OF FAULT AND ENFORCEMENT OF LIENS AGAINST PUBLIC BONDS AND FOR CONTINUED VIOLATIONS OF 18 USC § 241, 18 USC § 242

THIS IS A PRIVATE ADMINISTRATIVE PROCEEDING

|NOTICE TO AGENT IS NOTICE TO PRINCIPAL - NOTICE TO PRINCIPAL IS NOTICE TO AGENT|

---

**NOTICE OF FAULT AND ENFORCEMENT OF LIENS AGAINST PUBLIC BONDS
FOR CONTINUED VIOLATIONS OF 18 USC § 241, 18 USC § 242**

NOTICE PER UCC §§ 1-202, 1-303, 1-304, 1-305 AND 8-105, THIS IS A SELF EXECUTING SECURITY AGREEMENT / CONTRACT PER UCC §§ 1 THROUGH 4 AND 9, ACCEPTED AND TRIGGERED BY SILENCE, DEFAULT AND DISHONOR OF RESPONDENT (S) **SEE HEREIN INCLUDED DEFAULT SECTION AND NOTICE.**

A SECURITY - 15 USC

THIS IS A U.S.S.E.C. TRACER FLAG,
NOT A POINT OF LAW

Notice is hereby given to BAYVIEW LOAN SERVICING (hereinafter "BAYVIEW"), DAVID ERTEL, BRIAN E. BOMSTEIN, BRIAN E. BOMSTEIN, PA ANTONIO CHIAMENTI, MICHAEL B. GUSS, ROBERT PONDOLFI, THOMAS CARR, LAWRENCE A. HALPERN, TABAS, FREEDMAN & SOLOFF, P.A, JOEL LLOYD TABAS, GARY M. FREEDMAN, AND STACEY SOLOFF, and all agents, principals, assignees and/or successors thereof (collectively, the "Respondents"), of this notice of fault for distress against public bonds and continued violations of 18 USC § 241, 18 USC § 242 ("NOTICE") by Randal Thomas Rosado, American Non-Citizen National, owing permanent allegiance to the United States (the "Claimant").

---

**EXHIBIT
5**



## THE INTERNATIONAL COURT OF COMMERCE

### Venue

1. The International Court of Commerce "ICC" is the proper venue for this private administrative action. The ICC is a party to the United Nations Convention of the Recognition and Enforcement of Foreign Arbitral Awards.

2. The ICC is as an Alternative Dispute Resolution forum has jurisdiction, inter alia, to resolve: commercial disputes through administrative proceedings, judicial determinations, arbitration and/or mediation. Proceedings are executed, governed, and construed in accordance with the governing laws of the contract and common law, and guided but not bound by private international law, the Uniform Commercial Code, UNCITRAL and Law Merchant.

3. The Administrative Procedure Act (APA), Pub.L. 79–404, 60 Stat. 237, enacted June 11, 1946 is the United States federal statute that governs the way in which administrative agencies of the federal government of the United States may propose and establish regulations.

4. The Federal Arbitration Act (Pub.L. 68–401, 43 Stat. 883, enacted February 12, 1925, codified at 9 U.S.C. § 1 et seq.) is an act of Congress that provides for judicial facilitation of private dispute resolution through arbitration. It applies in both state courts and federal courts, as was held constitutional in Southland Corp. V. Keating.

5. The Respondent is an American Non-Citizen National (aka "foreign national" per the US Department of State) and has chosen this international venue for this private administrative process.

### PLAIN STATEMENT OF FACTS

6. On August 1, 2009, Respondent, BAYVIEW, with the assistance and/or direction of Respondents, DAVID ERTEL, BRIAN E. BOMSTEIN, BRIAN E. BOMSTEIN, PA ANTONIO CHIAMENTI, MICHAEL B. GUSS, ROBERT PONDOLFI, THOMAS CARR, LAWRENCE A. HALPERN has stolen the identity of RANDAL T ROSADO©, Estate and or similar variations in order to unlawfully obtain insurance proceeds that belonged to the estate.

7. BAYVIEW has caused malicious and intentional damage to Randal Thomas Rosado by filing a case against RANDAL T ROSADO© Estate on November 12, 2009. Proof of the allegations are contained in the constructive trust court case file with Index No. 09-13067, in the official court record and transcripts---- on file at the SUPREME COURT OF NEW YORK COUNTY OF ORANGE.

8. Respondents, BAYVIEW LOAN SERVICING, DAVID ERTEL, BRIAN E. BOMSTEIN, BRIAN E. BOMSTEIN, PA, ANTONIO CHIAMENTI, MICHAEL B. GUSS, ROBERT PONDOLFI, THOMAS CARR and LAWRENCE A. HALPERN, through their acquiescence, have acknowledged



### THE INTERNATIONAL COURT OF COMMERCE

their participation in the crimes alleged in the Clamant's AFFIDAVIT OF DISTRESS AND NOTICE OF COMMERCIAL LIEN.

9.  The Respondents verified their knowledge of the claimant's allegations as verified by the letter dated December 11, 2014, from Respondents, TABAS, FREEDMAN & SOLOFF, P.A, JOEL LLOYD TABAS, GARY M. FREEDMAN and STACEY SOLOFF as seen in Exhibit A.

10. Respondents, TABAS, FREEDMAN & SOLOFF, P.A, JOEL LLOYD TABAS, GARY M. FREEDMAN and STACEY SOLOFF have voluntarily entered into a controversy by including themselves in this commercial proceeding on behalf of Respondents, BAYVIEW, DAVID ERTEL, BRIAN E. BOMSTEIN, BRIAN E. BOMSTEIN, PA ANTONIO CHIAMENTI, MICHAEL B. GUSS, ROBERT PONDOLFI and THOMAS CARR, LAWRENCE A. HALPERN, and by doing as such, have become co-conspirators in the violations of 18 USC § 241, 18 USC § 242.

11. The Claimant responded to the above-referenced communication from TABAS, FREEDMAN & SOLOFF, P.A, JOEL LLOYD TABAS, GARY M. FREEDMAN and STACEY SOLOFF in a letter dated December 29, 2014, with the subject: *RE: Response to Correspondence and Official Request for Public Bonding Company Information per U.S. Code 15.* (Exhibit B)

12. Respondent, STACEY SOLOFF received a copy of the above-referenced request and presentment, as verified by US Certified Mail # 7014 0510 0000 6020 1243. (Exhibit C)

13. Respondent, JOEL LLOYD TABAS received a copy of the above-referenced request and presentment, as verified by US Certified Mail # 7014 0510 0000 6020 1267. (Exhibit C)

14. Respondent, TABAS, FREEDMAN & SOLOFF, P.A., received a copy of the above-referenced request and presentment, as verified by US Certified Mail # 7013 2250 0000 0082 5900. (Exhibit C)

15. All Respondents have ignored the Claimant's bond requests as required by law, and through their acquiescence have accepted all allegations of crimes stated on the AFFIDAVIT OF DISTRESS AND NOTICE OF COMMERCIAL LIEN.

16. All Respondents in their continued crimes against the Claimant's property and intentional and deliberate violations against the RANDAL T. ROSADO Estate, have violated the Civil Rights Act of 1871, 42 U.S.C. Section 1981, 1981(a) and 1988.

17. Based on the calculations from the AFFIDAVIT OF DISTRESS AND NOTICE OF COMMERCIAL LIEN, each Respondent's portion of the lien the Claimant is seeking to collect is Nine-hundred seventy-thousand dollars ($970,000.00) in Functional Currency of the United States.

18. As an operation of law, the Respondents by acknowledgement as detailed in this private administrative court case, has caused this NOTICE OF FAULT to turn into an 'account receivable'.

19. Respondent will seek enforcement against any insurance companies failing to file claims against the public servants that they insure after being made aware of this or other related action calling for the

### THE INTERNATIONAL COURT OF COMMERCE

filing of an insurance claim against the public official's bond or against the state, county or local charters. Insurance companies participating in this fraud will be held to the same damages indicated in paragraph 14 and as previously stated in the filing unlawfully removed by the Respondents.

20. In the event that the claim is not settled privately or through the insurance carrier, Claimant will seek garnishment of bank accounts, employee payroll and seizure of real property as necessary for full payment collection or until the matter is resolved amicably. This was clearly stated in the removed filing with the following language:

    *If the bond(s) of the Lien Debtors is/are insufficient for coverage the payment(s) the assets of the Lien Debtor(s) will be utilized as follows:* **all the real and moveable property and bank and savings accounts and of the Lien Debtors except wedding rings, keepsakes, family photographs, diaries, journals, etc., and the property normally exempted in the lien process (includes survival provisions).**

### DEFAULT

For the Respondents' failure, refusal, or neglect in the presentment of a verified response to the AFFIDAVIT OF DISTRESS AND NOTICE OF COMMERCIAL LIEN, constitutes the Respondent's failure to perform in good faith and the Respondents' acquiescence and tacit agreement with all terms, conditions and stipulations set forth within the AFFIDAVIT OF DISTRESS AND NOTICE OF COMMERCIAL LIEN leading to this NOTICE OF FAULT AND ENFORCEMENT OF LIENS AGAINST PUBLIC BONDS AND FOR CONTINUED VIOLATIONS OF 18 USC § 241, 18 USC § 242.

### DAMAGES

**DEMAND IS NOW MADE UPON** all Respondents individually or severally for the sum certain of Eight-million seven-hundred thirty-thousand dollars ($8,730,000.00). Respondents are at fault for ninety seven (97) listed Constitution and Bill of Rights violations valued at $10,000 per violation times nine (9) Respondent-Lien Debtors.

21. The Respondents' have all confirmed that the surety/property utilized to guarantee the payment of this commercial lien is any operational/commercial bonds of each Respondent.  If the bond(s) of the Respondents are insufficient for coverage the payments of the assets of the Respondents have confirmed that they will utilize its real and moveable property and bank and savings accounts except wedding rings, keepsakes, family photographs, diaries, journals, etc., and the property normally exempted in the lien process (includes survival provisions).

**THE INTERNATIONAL COURT OF COMMERCE**

22. Claimants seek the seizure of the real and personal property of Respondent, BRIAN ERIC BOMSTEIN, including real property located at **5030 Regency Isles Way, Cooper City, FL 33330**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

23. Claimants seek the seizure of the real and personal property of Respondent, ANTONIO CHIAMENTI, including real property located at **4089 Holly CT, Weston FL 33331-3812**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

24. Claimants seek the seizure of the real and personal property of Respondent, MICHAEL B. GUSS, including real located at **8267 Duomo Cir Boynton Beach, FL 33146-1837, and 401 Ocean Dr Apt 918, Miami Beach, FL 33139-6633**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

25. Claimants seek the seizure of the real and personal property of Respondent, ROBERT PONDOLFI, including any interests in real property located at **16404 Bridge End Rd., Apt. 1840, Miami Lakes, FL -33014-6041**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

26. Claimants seek the seizure of the real and personal property of Respondent, THOMAS FX CARR, including any interests in real property located at **580 W 50TH Street Miami Beach FL 33140**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

27. Claimants seek the seizure of the real and personal property of Respondent, LAWRENCE A HALPERN, including any interests in real property located at **7347 NW 111 Way, Parkland Florida 33076**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment..

28. Claimants seek the seizure of the real and personal property of Respondent, STACEY SOLOFF, including any interests in real property located at **340 Alexandra Circle, Weston Florida 33326**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

29. Claimants seek the seizure of the real and personal property of Respondent, JOEL LLOYD TABAS, including any interests in real property located at **8925 Bay Drive Surfside, Florida 33154-3313**, and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

30. Claimants seek the seizure of the real and personal property of Respondent, ERTEL DAVID, including any interests in real property located at **16 Tahiti Beach Island Rd. Coral Gables, Florida**



**THE INTERNATIONAL COURT OF COMMERCE**

**33143-6540,** and any personal belongings on the premises as necessary to settle this Claimant's portion of the judgment.

## OPPORTUNITY TO CURE

Claimant grants Respondents ten (10) days, exclusive of the day of receipt, to cure the fault and affect the remedy. Failure to cure will constitute, as an operation of law, the FINAL admission of the obligation by Respondents through tacit procuration to the payment tender and the whole matter shall be deemed res judicata and stare decisis.

Claimant awaits Respondents timely response.

Given under my hand and seal. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true, correct, complete and not misleading. Witness my hand and seal.

Executed on February 15, 2016        By:        _George Tenner_____        (seal)

George Tenner
% REICHMANN GROUP
Attorney-in-Fact for Claimants
340 Lemon Avenue Suite 2050
Walnut, CA 91788

# EXHIBIT A



**TABAS FREEDMAN**

One Flagler Building
14 Northeast First Avenue, Penthouse
Miami, Florida 33132

Telephone 305.375.8171
Facsimile 305.381.7708
www.tabasfreedman.com

Stacey F. Soloff
ssoloff@tabasfreedman.com

*Bel Tabas*
*8425 Bay Dr*
*SurFside, FL 33154-3313*

December 11, 2014

Randal Thomas Rosado
340 Royal Poinciana Way #317-141
Palm Beach, Florida 33480

***Via United States Mail and***
***Certified Mail, Return Receipt***
***Requested***

Re:    Your correspondence dated December 1, 2014

Dear Mr. Rosado:

This law firm represents Bayview Loan Servicing, LLC and Bayview Asset Management, LLC (collectively referred to as "Bayview"), and Robert Pondolfi, Brian Bomstein, Antonio Chimienti, Michael Guss, Thomas Carr and Lawrence Halpern (collectively, the "Individuals"), both individually and in their capacities as employees of Bayview.  Please immediately cease and desist from any further communication with Bayview and each of the Individuals in any manner and by any means other than through this office.  This includes, but is not limited to, directing any correspondence to the Individuals' business and home addresses.  Bayview and the Individuals have the right to be free from harassing activity and if you do not immediately cease all contact Bayview and the Individuals may pursue any legal remedies available to them including but not limited to contacting law enforcement, seeking a restraining order, and commencing civil litigation.  This letter should not be taken as a waiver of any legal rights Bayview or the Individuals may now have or may have in the future; its purpose is to advise you to cease direct communication before Bayview and the Individuals exercise those rights.

GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

*Stacey*
*340 Alexaitra Cir*
*Weston, FL 33326*

Stacey F. Soloff
cc:    Bayview Loan Servicing, LLC
       Bayview Asset Management, LLC
       Robert Pondolfi
       Brian Bomstein
       Antonio Chimienti
       Michael Guss
       Thomas Carr
       Lawrence Halpern
       Gary M. Freedman

Tabas, Freedman & Soloff, P.A.

# EXHIBIT B

RANDAL THOMAS ROSADO
c/o Randal Thomas Rosado
340 Royal Poinciana Way #317-141
Palm Beach, Florida

Tabas, Freedman & Soloff, P.A.
One Flagler Building
14 Northest First Avenue, Penthouse
Miami, Florida 33132
Phone: 305-375-8171
Fax: 305-381-7708

December 29, 2014

**RE: Response to Correspondence and Official Request for Public Bonding
Company Information per U.S. Code 15**

Dear Stacey,

      I am in receipt of your letter dated December 11, 2014 on behalf of Bayview Loan

Servicing, LLC, Bayview Asset Management, LLC and its attorneys, regarding a request

to "cease and desist" in my communications with your clients, when they have committed

numerous crimes against me, in addition to other federal and state violations since 2009.

Needless to say, I find it ironic that you are asking me to cease and desist and considering

the exercising of my civil rights and communication as "harassment" and have threatened

me with "law enforcement", when your client has brought this controversy to me and I

never had any contractual agreements with them or any of their representatives. Your

attempts to threaten and bully me under the color of law can only be construed that you

and your partner attorneys have taken a position as co-conspirators in the crimes against

me and my estate, including violations against the constitution, bill of rights, and

Racketeering and Corrupt Organizations Act (RICO) for the trespasses, theft of property

and criminal acts. Your client has also violated New York Trust Law, committed

securities fraud and evaded IRS taxes as will be explained further throughout this letter.

      I also invite you to show me what law states that I cannot communicate

communicate with  your clients at their personal residence or any location listed on public

records, as they have without contract, notice or invitation committed damage against my

personal residence. Please explain why you feel as if you are above the law and can make

the rules as you go along in order to intimidate the public? Did you not take an oath of office when becoming registered with the Florida Bar?

**THIS IS OFFICIAL NOTICE AND REQUEST FOR PUBLIC BONDING INFORMATION** to you, Joel Lloyd Tabas, and Gary M. Freedman. All officials are required by federal, state, and municipal law to provide the name, address and telephone number of their public hazard and malpractice bonding company and the policy number of the bond and, if required, a copy of the policy describing the bonding coverage of their specific job performance. Failure to provide this information constitutes corporate and limited liability insurance fraud (15 USC) and is prim-a-facie evidence and grounds to impose a lien upon the official personally to secure their public oath and service of office. Failure to provide this information to me will result in liens being placed against you and your partners, and enforcement of those liens will be sought against your personal property in an international common law court that will render your Bar card and law degree useless, forcing you to play by the rules and stop acting as if you are above the law.

Furthermore, your clients, Robert Pondolfi, Brian Bomstein, Atonio Chimienti, Michael Guss, Thomas Carr, and Lawrence Halpern have failed to provide their public bonding information to me as requested, and as such, I will be seeking to collect through liens against any and all personal property, either individually or collectively until the lien has been satisfied. This request was made thoroughly in writing on the December 1, 2014 correspondence that your letter addresses. Your clients' acquiescence and failure to rebut the contents of the affidavit that details the crimes they have committed, provide proof of their guilt. **An un-rebutted affidavit stands as truth in commerce. An un-rebutted affidavit is acted upon as the judgment in commerce.**

For more than 5 years your client has continued to lie and contradict its own statement through written correspondence on its own letterhead. They have also filed fraudulent documents into county records to transfer ownership of an alleged mortgage without any consideration or valid authority. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act.

**Title 18 USC chapter 47 § 1021**

*Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

While your client recorded the fraudulent assignment on August 9, 2009, correspondence from them beyond that point denies ownership, including a letter from your client (Sara Torres) dated January 27, 2010 that directly contradicts a letter received by CitiMortgage (Tonya Garner) on January 20, 2010 indicating that the "transfer" occurred on August 3, 2009. Yet, in a letter from your client (Ana Vega) dated May 2, 2014, they indicate that they "acquired servicing" on March 9, 2010.

Regardless of all of that, your client (Marilyn Coro, Vice President) has sent a "NOTICE OF TRANSFER OF MORTGAGE LOAN" dated March 23, 2010, that indicates the "new creditor" as being **U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1.** Then on July 01, 2013 your client (Marilyn Coro, Vice President) had sent another "NOTICE OF TRANSFER OF MORTGAGE LOAN" indicating the new creditor as **U.S. Bank National Association, as trustee, in trust for the benefit of the Holders of <u>BAYVIEW OPPORTUNITY FUND</u> REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1.**

It appears that you, your clients, and their other attorneys you are committing securities fraud and violating New York State Trust Law. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. The NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Suchapter M, Part II § 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has voided its Tax Free Status, or the asset is not in fact owned by it.

In the event that the loan was sold, pooled, and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full. Further said, once the Note was converted into a stock, or stock equivalent, it

is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as "double dipping". Double dipping is a form of securities fraud.

In order to exist, the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1 agreed to operate under the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1 PSA and all applicable Law. As previously explained in ¶22, in order to for the Mortgage Loan to be transferred to the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1, a chain of negotiations needed to occur. A direct transfer from the Original Lender, Argent Mortgage, LLC, would violate the terms and conditions under the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1 PSA, under New York State Trust Law governing the the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1, and would therefore be void either or both. These principles were recently confirmed in US District Court and New York Supreme Court and the California Supreme Court:

*"See Wells Fargo Bank, N.A. v. Erobobo, et al., 2013 WL 1831799 (N.Y. Sup. Ct. April 29, 2013). In Erobobo, defendants argued that plaintiff (a REMIC trust) was not the owner of the note because plaintiff obtained the note and mortgage after the trust had closed in violation of the terms of the PSA governing the trust, rendering plaintiff's acquisition of the note void. Id. at \*2. The Erobobo court held that under § 7-2.4, any conveyance in contravention of the PSA is void; this meant that acceptance of the note and mortgage by the trustee after the date the trust closed rendered the transfer void. Id at 8. Based on the Erobobo decision and the plain language of N.Y. Est. Powers & Trusts Law § 7-2.4, the Court finds that under New York law, assignment of the Saldivars' Note after the start up day is void ab initio"*

Furthermore, an assignment of the Mortgage made now would not be timely to properly transfer the Note and Mortgage to the Holders of CBO REMIC Trust 2010-1, Certificates, Series 2010-1 and/or the Holders of BAYVIEW OPPORTUNITY FUND REMIC Trust 2013-1 Beneficial Interest Certificates, Series 2013-1, where it has been shown to be an asset.

*Conveyance of Mortgage Loans.*

*(a) The Depositor, concurrently with the execution and delivery hereof, does hereby establish the Trust and transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule, the rights of the Depositor under the Assignment and Assumption Agreement and the Mortgage Loan Purchase Agreement and all other assets included or to be included in the Trust Fund. Such assignment includes all interest and principal received by the Seller, the Depositor or the Servicer on or with respect to the Mortgage Loans (other than payments of principal and interest due on such Mortgage Loans on or before the Cut-off Date). The Depositor herewith delivers to the Trustee and the Securities Administrator an executed copy of the Assignment and Assumption Agreement. In addition, on or prior to the Closing Date, the Securities Administrator shall execute the Swap Agreement and the Depositor hereby directs the Securities Administrator to do so. With respect to any Mortgage Loan that does not have a first payment date during the Due Period related to the first Distribution Date, the Depositor shall deposit into the Distribution Account on or before the Servicer Remittance Date relating to the first Distribution Date, an amount equal to one month's interest at the related Net Mortgage Rate on the Cut-off Date Stated Principal Balance of such Mortgage Loan.*

If the assignment and transfer of the Mortgage Loans and the other property specified in this Section 2.01 from the Depositor to the Trustee pursuant to this Agreement is held or deemed not to be a sale or is held or deemed to be a pledge of security for a loan, the Depositor intends that the rights and obligations of the parties shall be established pursuant to the terms of this Agreement and that, in such event, (i) the Depositor shall be deemed to have granted and does hereby grant to the Trustee, for

the benefit of the Certificateholders, as of the Closing Date a perfected, first priority security interest in the entire right, title and interest of the Depositor in and to the Mortgage Loans and all other property conveyed to the Trust Fund pursuant to this Section 2.01 and all proceeds thereof, substitutions therefor and accessions thereto, and (ii) this Agreement shall constitute a security agreement under applicable law.

*Prohibited Transactions and Contributions Tax.*

*The REMIC will be subject to a 100% tax on any net income derived from a "prohibited transaction." For this purpose, net income will be calculated without taking into account any losses from prohibited transactions or any deductions attributable to any prohibited transaction that resulted in a loss. In general, prohibited transactions include:*

*(1) subject to limited exceptions, the sale or other disposition of any qualified mortgage transferred to the REMIC;*

*(2) subject to a limited exception, the sale or other disposition of a cash flow investment;*

*(3) the receipt of any income from assets not permitted to be held by the REMIC pursuant to the Code; or*

*(4) the receipt of any fees or other compensation for services rendered by the REMIC.*

*It is anticipated that a REMIC will not engage in any prohibited transactions in which it would recognize a material amount of net income. In addition, subject to a number of exceptions, a tax is imposed at the rate of 100% on amounts contributed to a REMIC after the close of the three-month period beginning on the startup day. The holders of Residual Interest Securities will generally be responsible for the payment of any taxes for prohibited transactions imposed on the REMIC. To the extent not paid by those holders or otherwise, however, taxes that will be paid out of the trust fund and will be allocated pro rata to all outstanding classes of securities of that REMIC.*

We are also requesting an IRS investigation of your company for tax evasion based on Internal Revenue Code Section 860, which regulates the activities and requirements of a REMIC Trust. *According to 26 CFR§ 1.860D-1(c)(2)* **Identification of assets.** *The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC.*

We ask for your forthcoming assistance in providing any information that would determine that you are not violating any New York State Trust Laws stated below:

NY Estates, Powers and Trust Law § 7-1.18 Trust Asset
*Unless an asset is transferred into a lifetime trust, the asset does not become trust property.*

NY Estates, Powers and Trust Law § 7-2.4 Trustees Duties
*A trustee's act that is contrary to the trust agreement is void.*

NY Estates, Powers and Trust Law § 5-1401. Choice of law

1. The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1-105 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection two of section 1-105 of the uniform commercial code.

2. Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement or undertaking.

NY Estates, Powers and Trust Law § 5-1402. Choice of forum

1. Notwithstanding any act which limits or affects the right of a person to maintain an action or proceeding, including, but not limited to, paragraph (b) of section thirteen hundred fourteen of the business corporation law and subdivision two of section two hundred-b of the banking law, any person may maintain an action or proceeding against a foreign corporation, non-resident, or foreign state where the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of New York law has been made in whole or in part pursuant to section 5-1401 and which (a) is a contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate, not less than one million dollars, and (b)

which contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state.

Your request for a cease and desist on behalf of your clients seems a bit ridiculous since they are currently suing me in a New York court, but I will conditionally accept your offer based on ALL the following grounds:

1. Voluntary dismissal of the 2009 New York case (I will agree to drop counterclaims) AND

2. Return of stolen insurance proceeds your client has been holding since 2009 with interest AND

3. Restitution for the crimes committed against me and my family for the past 5.5 years in the amount of $267,750, as indicated by the alleged note tendered from the private treasury account of RANDAL T. ROSADO AKA RANDAL THOMAS ROSADO.

Please be advised that if a settlement is not reached and you fail to provide me with the public insurance bond information for yourself and your partners within 30 days, I will be seeking to enforce commercial liens against you for your crimes against me for your unlawful actions and abuse of power as public officials under the color of law.

Sincerely,

Randal Thomas Rosado, Secured Party Executor/Administrator
RANDAL THOMAS ROSADO

cc:

U.S. Securities and Exchange Commission
Office of Investor Education and Advocacy
100 F Street, NE
Washington, DC 20549-0213

Internal Revenue Service
Criminal Investigations Division
PO Box 192
Covington, Kentucky  41012

Department of Financial Services
Consumer Assistance Unit
One Commerce Plaza
Albany, NY 12257

U.S. Bank National Association
Attn: Corporate Trust Services
60 Livingston AVenue, EP-MN-WS3D
St. Paul, Minnesota 55107

Stacey Soloff
340 Alexandra Circle
Weston, FL 33326

Joel Tabas
8925 Bay Drive
Surfside, FL 33154-3313

Thomas Rosicki
4 Linden Lane
East Norwich, NY 11732-1626

Cynthia Rosicki
4 Linden Lane
East Norwich, NY 11732-1626

# EXHIBIT C

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Stacy Soloff

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

7014 0510 0000 6020 1424

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Soloff

Sent To  Tabas

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

7014 0510 0000 6020 1267

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tabas, Freedman + Soloff, PA
Attn: Stacey Soloff
14 Northeast First Ave
Miami, FL 33132

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7013 2250 0000 0082 5900

PS Form 3811, July 2013          Domestic Return Receipt